RECEIVED
SEP 0 7 2017
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAYMOND HOF,

    Plaintiff,

v.

JAMES JANCI, ESQ., HUNTERDON
COUNTY PROSECUTOR'S OFFICE, JOHN
DOE 1-10, GOVERNMENTAL AGENCY 1-
10

    Defendants.

Civ. No. 17-295

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a motion to dismiss brought by Defendants James Janci, Esq. ("Defendant Janci") and Hunterdon County Prosecutor's Office ("Defendant HCPO") (collectively "Defendants"). (ECF No. 13.) Plaintiff Raymond Hof ("Plaintiff") opposes. (ECF No. 14.) The Court has decided the motion after considering the parties' written submissions and oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendants' motion is granted in part.

## BACKGROUND

Plaintiff brings this civil rights suit against Defendants Janci and HCPO. Plaintiff's allegations are as follows. Defendant HCPO is a County Agency that prosecuted Plaintiff and Defendant Janci was First Assistant Prosecutor in the Hunterdon County Prosecutor's Office at

1

all times relevant to the Complaint. (Compl., ECF No. 1 at "Parties" ¶¶ 2–3.)[1] Plaintiff was subject to Community Supervision for Life ("CSL") due to a 2001 conviction. (*Id.* at "Factual Allegations Common to All Counts" ¶ 1.) On or about May 29, 2014, a Hunterdon County Grand Jury indicted Plaintiff for violating a condition of CSL. (*Id.*) On or about August 7, 2014, a Hunterdon County Grand Jury also indicted Plaintiff for Terroristic Threats, Possession of Weapons, Possession of Weapons for Unlawful Purposes, and two counts of Criminal Restraint arising out of an alleged domestic violence incident on June 12, 2014. (*Id.*)

The Criminal Judge granted Plaintiff bail and did not issue a "no-contact order" for the alleged victim of the domestic violence, Plaintiff's girlfriend. (*Id.* at "Factual Allegations Common to All Counts" ¶ 3.) Plaintiff planned to live with his girlfriend. (*Id.* at "Factual Allegations Common to All Counts" ¶ 4.) Plaintiff was set to be released on January 16, 2015. (*Id.*) However, on that same day, Defendant Janci purposefully lied to Plaintiff's parole officer, and stated that there was a no-contact order in place and that Plaintiff would violate the no-contact order upon his release. (*Id.*) Plaintiff's parole officer then "attempted to pressure [Plaintiff] into signing papers stating that he would stay away from his girlfriend and enroll in a halfway house." (*Id.* ¶ 4.) Plaintiff refused, was arrested for violating CSL, and was imprisoned until February 20, 2015. (*Id.* ¶¶ 4–5.) Plaintiff was unable to see his girlfriend for more than a year. (*Id.* ¶ 5).

Plaintiff further alleges that Defendant HCPO is the ultimate policymaking authority for its employees; that Defendant HCPO is legally responsible for the hiring, training, retention, supervision, and discipline of its employees; that it is legally responsible for the acts of its

---

[1] The Complaint does not include page numbers, and the numbering of the paragraphs restarts with each individual section of the Complaint. Therefore, for citation purposes, the Court will refer to the title of the section of the Complaint before referring to the paragraph number.

2

employees based on principles of agency, respondeat superior, vicarious liability, and also for its direct participation in the violation of Plaintiff's rights. (*Id.* at "Additional Facts Regarding Liability" ¶¶ 1–4.) Defendant Janci's wrongful actions were undertaken in the absence of reasonable good faith, with actual malice, and within the scope of his employment with Defendant HCPO. (*Id.* ¶¶ 5–6.)

Plaintiff's Complaint includes six counts: (1) Violation of 42 U.S.C. § 1983; (2) Violation of State Civil Rights Law and 42 U.S.C. § 1988; (3) Malicious Prosecution/Malicious Abuse of Legal Process; (4) Malicious Misrepresentation Causing Damage; (5) Fraud; (6) False Imprisonment. (*See* Compl.) Plaintiff filed the Complaint on January 16, 2017 (*id.*), bringing claims against Defendant HCPO and Defendant Janci in both his official and individual capacity. (*Id.* at "Parties" ¶¶ 2–3.) The Clerk of Court entered default for failure to plead or otherwise defend against Defendant HCPO on February 14, 2017 and against Defendant Janci on February 24, 2017. (*See* ECF Entry dated February 14, 2017; ECF No. 7.) On April 5, 2017, this Court granted the motion to vacate default filed by Defendants. (ECF Nos. 9, 10.) Defendants subsequently filed the motion to dismiss presently before the Court. (ECF No. 13.) Oral argument was held on August 24, 2017.

## LEGAL STANDARDS

I. <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Under Federal Rule of Civil Procedure 12(b)(1), a Defendant may move at any time to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In analyzing a facial challenge, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Mortensen*, 549 F.2d at 891). In considering a

3

factual challenge, however, a court "may consider evidence outside of the pleadings." *Id.* (citing *Mortensen*, 549 F.2d at 891). Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 WL 3908567, at *2 (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

II.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Const. Corp.*, 2016 WL 106159 (3d Cir. Jan. 11, 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). If the complaint does not demonstrate more than a "mere possibility of misconduct," the complaint must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## ANALYSIS

Defendants make six separate arguments in their motion to dismiss. The Court will address each in turn.

I. Eleventh Amendment Sovereign Immunity

Defendants first argue that Plaintiff's claims against Defendant HCPO and Plaintiff's claims against Defendant Janci in his official capacity are barred by Sovereign Immunity derived from the Eleventh Amendment of the U.S. Constitution. This argument challenges the Court's subject matter jurisdiction, and therefore is determined pursuant to Federal Rule of Civil Procedure 12(b)(1). *Bianciak v. Allegheny Ludium Corp.*, 77F.3d 690, 693 n.2 (3d Cir. 1996).

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment's grant of sovereign immunity applies to § 1983 claims brought against a state. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Eleventh Amendment immunity also extends to certain actions against state agencies and departments so long as the state itself is the real party in interest. *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989). Similarly, the NJCRA has also been interpreted to grant immunity to "states and state officials acting in their official capacity." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014). In determining whether sovereign immunity applies, the Court must consider: (1) the source of the funds that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. *Fitchik*, 873 F.3d at 659. The Third Circuit recently held that whether a defendant enjoys Eleventh Amendment sovereign immunity is "analytically distinct" from whether a Defendant is a "person" subject to suit under § 1983, and that "*Fitchik* provides the proper framework for analyzing Eleventh Amendment sovereign immunity as it applies to county prosecutors." *Lagano*, 769 F.3d at 857–58 (3d Cir. 2014). The Eleventh Amendment does not preclude suits

5

brought against State officials in their individual capacities, however, even if the challenged conduct was part of their official responsibilities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

      a. *Fitchik* Factor One: Source of Funds

The first *Fitchik* factor is the source of the funds to pay for the judgment. *Fitchik*, 873 F.3d at 659. This is the most important of the three factors. *Id.* Under this factor, the Court must determine if the State will ultimately absorb financial responsibility for a judgment in the case. "Under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, 'they act as agents of the State.' As such, they are entitled to indemnity under the [New Jersey Tort Claims Act] for judgments arising from such conduct." *Harvey v. Cty. of Hudson*, 2015 WL 9687862, at *5 (D.N.J. Nov. 25, 2015) (citing *Wright v. State*, 778 A.2d 443, 461–62, 464 (N.J. 2001)). However, if the alleged misconduct involves fraud, actual malice, or willful misconduct, the State of New Jersey is not required to defend and indemnify county prosecutors. *Wright*, 778 A.2d at 465; *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) (noting that the Attorney General may refuse to indemnify under N.J.S.A. § 59-10A-2 if the act resulted from willful misconduct or actual malice).

Here, Plaintiff alleges that Defendant Janci purposefully lied to Plaintiff's parole officer by stating that there was a no-contact order in place which Plaintiff would violate upon his release. (Compl. at "Factual Allegations Common to All Counts" ¶ 4). Although communication between an Assistant Prosecutor and a parole officer relates to law enforcement or prosecutorial function, Plaintiff's allegations involve fraud, malice, or misconduct such that the State would not be required to defend and indemnify Defendants. *Wright*, 778 A.2d at 465. While the State is thus not obligated to represent and indemnify Defendants here, the State appears to have chosen to do so, such that any judgment would come from the State.

6

The New Jersey Supreme Court has held that the State's obligations to defend and indemnify under N.J.S.A. § 59:10A–1 are "wedded together." *Wright*, 778 A.2d at 444–45. More specifically, the State must "indemnify employees for whom a defense is provided." *Id.* at 444 (citing N.J.S.A. § 59:10A–1). Here, the Office of the Attorney General is representing Defendants.[2] Defendants also represent in their brief that "the State will ultimately have to withdraw funds from its treasury to account for being both vicariously liable for their actions and responsible for their defense and indemnification." (Defs.' Br., ECF No. 13 at 9). Based on this statement, the fact that the Office of the Attorney General is representing Defendants, and the New Jersey Supreme Court's explanation of the State's obligations in *Wright*, the State appears to have agreed to represent and indemnify Defendants, satisfying the first *Fitchik* factor.

    b. *Fitchik* Factor Two: Status Under Law

The second *Fitchik* factor is the status of the agency under state law. The focus of the second factor is "whether state law treats an agency as independent, or as a surrogate for the state." *Fitchik*, 873 F.2d at 662. County prosecutors are "appointed by the Governor with the advice and consent of the [State] Senate." N.J. Const. art. VII, § II.1. "'The criminal business of the State' of New Jersey is 'prosecuted by the Attorney General and the county prosecutors.'" *In re Camden Police Cases*, 2011 WL 3651318, at *8 (D.N.J. Aug. 18, 2011) (citing N.J.S.A. § 2A:158–4). "Under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, 'they act as agents of the state.'" *Hyatt v. Cty. of*

---

[2] At oral argument on August 24, 2017, Defendant's counsel represented that his office's representation of Defendants HCPO and Janci evidenced an agreement to indemnify the Defendants. The Court notes that multiple Courts in this District have found similar agreements to represent and indemnify a defendant relevant in evaluating the first factor of a *Fitchik* analysis. *See, e.g., Harvey v. Cty. of Hudson*, 2015 WL 9687862, at *4 (D.N.J. Nov. 25, 2015); *In re Camden Police Cases*, 2011 WL 3651318, at *5 n.5 (D.N.J. Aug. 18, 2011); *Landi v. Borough of Seaside Park*, 2009 WL 606141, at *4 (D.N.J. Mar. 9, 2009); *Kandil v. Yurkovic*, 2007 WL 4547365, at *4 (D.N.J. Dec. 18, 2007).

7

*Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) (citing *Wright*, 778 A.2d at 461). As discussed above, Plaintiff alleged misconduct with respect to law enforcement and prosecutorial functions. Defendants HCPO and Janci are not treated as independent entities under New Jersey law. Therefore, the Court finds that the second *Fitchik* factor is satisfied.

    c. *Fitchik* Factor Three: Degree of Autonomy

The Third *Fitchik* factor is the agency's degree of autonomy. County Prosecutor's offices and their employees are subject to supervision and supersession by the Attorney General. N.J.S.A. § 52:17B-106 ("[T]he Attorney General may supersede the county prosecutor for the purpose of prosecuting all of the criminal business of the State in said county, intervene in any investigation, criminal action, or proceeding instituted by the county prosecutor, and appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions or proceedings as shall be necessary for the protection of the rights and interests of the State."). Thus, the Court finds that neither Defendant HCPO nor Defendant Janci is autonomous.

    d. Balancing the Factors

In sum, the Court finds that all three *Fitchik* factors are satisfied. Therefore, Defendant HCPO and Defendant Janci—to the extent that Plaintiff's claims are brought against him in his official capacity—are entitled to sovereign immunity, and these claims are dismissed.[3] However, as noted above, the Eleventh Amendment does not preclude suits brought against State officials in their individual capacities, even if the challenged conduct was part of their official responsibilities. *Hafer*, 502 U.S. at 31. Thus, Plaintiff's claims against Defendant Janci in his individual capacity are not dismissed on this basis.

---

[3] Additionally, at oral argument on August 24, 2017, Plaintiff's counsel represented that Plaintiff would no longer be pursuing all claims against Defendant HCPO.

8

II. Whether Defendant HCPO and Defendant Janci in His Official Capacity are "Persons" under 42 U.S.C. § 1983 and the NJCRA

Defendant also argues that Plaintiff's claims must be dismissed because Defendant HCPO and Defendant Janci *in his official capacity* are not "persons" amenable to suit under § 1983 and the New Jersey Civil Rights Act ("NJCRA"). Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). Whereas local government bodies and their officials are "persons" under § 1983, states, state agencies, and state officials acting in their official capacities are not. *Lagano*, 769 F.3d at 854 (3d Cir. 2014) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)). As the Third Circuit explained in *Lagano*, this inquiry cannot be collapsed into the sovereign immunity analysis. *Id.* at 857–58, 858 n.8.

Like § 1983, the NJCRA creates a cause of action against a "*person* acting under color of law." N.J. Stat. Ann. § 10:6-2 (emphasis added). In this context, "person" likewise does not extend to the state itself or state agencies or officials in their official capacity. *Lagano*, 769 F.3d at 856 ("New Jersey district courts have interpreted the NJCRA as having incorporated the Supreme Court's decision in *Will* that, for purposes of § 1983, states and state officials acting in their official capacity are not amenable to suit."); *see also Didiano v. Balicki*, 488 F. App'x 634, 637–39 (3d Cir. 2012) (interpreting the definition of "person" in N.J. Stat. Ann. § 1:1-2).

The question thus becomes whether Defendants HCPO and Janci were acting as arms of the state when performing the alleged offending conduct. The Third Circuit's decision in *Coleman v. Kaye*, 87 F.3d 1491 (3d Cir. 1996), governs this analysis. When New Jersey county

9

prosecutors "engage in classic law enforcement and investigative functions, they act as officers of the state." *Coleman*, 87 F.3d at 1505. When, however, prosecutors "perform administrative functions 'unrelated to the duties involved in criminal prosecutions,'" *Lagano*, 769 F.3d at 855 (quoting *Coleman*, 87 F.3d at 1505–06), they are not acting as arms of the state but as county officials who remain subject to § 1983 suits. The category of the actions taken, and not their alleged wrongfulness, is determinative. Whereas personnel or staffing decisions fall within the administrative ambit of a prosecutor's office and therefore "flow from the County," *Evans v. City of Newark*, 2016 WL 2742862, at *9 (D.N.J. May 10, 2016), actions taken related to enforcing the criminal law—including introducing fabricated evidence at trial—fall within the "law enforcement and prosecutorial functions" of the county prosecutor's office and therefore constitute conduct as an arm of the state. *Id.* at *10.

Here, Defendant Janci allegedly communicated with a parole officer to discuss fabricated conditions of Plaintiff's release on bail. (Compl. at "Factual Allegations Common to All Counts" ¶¶ 3–4.) Communication on such a subject between the prosecuting authority and the accused's parole officer falls within the traditional law enforcement and prosecutorial functions of both Defendant HCPO and Defendant Janci in his official capacity, regardless of the alleged malicious or fraudulent character of the statement made. *Cf. Lagano*, 769 F.3d at 855–56 (describing actions taken in the context of a personal and business relationship by an individual prosecutor and his office that exceeded the "classic law enforcement and investigative functions"). Accordingly, both Defendant HCPO and Defendant Janci *in his official capacity* were acting as arms of the state and therefore are not "persons" under § 1983 or the NJCRA, and the claims against them are dismissed on this basis. The § 1983 and NJCRA claims against Defendant Janci in his *individual capacity*, however, may proceed.

10

III. Absolute Prosecutorial Immunity

Defendants also argue that Defendant Janci is entitled to absolute prosecutorial immunity. The Third Circuit assigns the "heavy burden" of establishing absolute immunity to the prosecutor, *Light v. Haws*, 472 F.3d 74, 80–81 (3d Cir. 2007), beginning from a presumption that the lesser protection of qualified immunity applies. *Odd v. Malone*, 538 F.3d 202, 207–08 (3d Cir. 2008). Prosecutors enjoy absolute immunity from § 1983 claims stemming from "activities . . . intimately associated with the judicial phase of the criminal process . . ." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), but qualified immunity when "acting in an investigative or administrative capacity . . . ." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (citing *Imbler*, 424 U.S. at 430; *Burns v. Reed*, 500 U.S. 478 (1991)). Courts must engage a "'functional' analysis," *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994), to determine whether the prosecutor "was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006). The Third Circuit rejects "bright-line rules that would treat the timing of the prosecutor's action (e.g. pre- or postindictment), or its location (i.e. in- or out-of-court), as dispositive." *Odd*, 538 F.3d at 210.

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, absolute immunity is not appropriate at the motion to dismiss stage. Defendant Janci's alleged phone call to Plaintiff's parole officer to discuss the conditions of his release on bail was not clearly within the scope of Defendant Janci's advocative role. While Plaintiff was already indicted, the timing of the conduct is not dispositive, and based on the allegations in the Complaint it seems Defendant Janci's alleged call was on a matter collateral to his preparation for judicial proceedings or prosecution of the pending domestic violence charges. *See Buckley v. Fitzimmons*, 509 U.S. 259, 273 (1993) ("A prosecutor's administrative duties and those

11

investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."); *see also Rose v. Bartle*, 871 F.2d 331, 346 (3d Cir. 1989) (finding pleadings did not enable the Court to determine what role defendant-prosecutors were acting in when they relayed confidential grand jury information to individuals outside of their office).

Defendants cite a litany of cases granting absolute immunity to prosecutors for clear advocative acts—*e.g.* statements and conduct at trial—and investigative acts closely related to judicial proceedings. *See, e.g., Kulwicki*, 969 F.2d at 1463–65 (noting that malicious prosecution, soliciting false witness testimony, using false testimony in connection with a prosecution, and conducting interviews for grand jury evidence are protected by absolute immunity). However, because Defendant Janci's call allegedly led to Plaintiff's subsequent re-arrest for violating his 2001 CSL, the conduct more closely mirrors cases in which prosecutors acted in a purely investigative role in deciding "whether a suspect may be arrested," *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993), or provided legal advice to police officers beyond their role as the state's advocate in an existing prosecution, *see, e.g., Burns v. Reed*, 500 U.S. 478, 496 (1991); *Giuffre*, 31 F.3d at 1253-54 (extending the reasoning of *Buckley* and *Burns* to a situation in which a defendant was already "under arrest by the Prosecutor's Office"). Defendant Janci's alleged conduct is also similar to acting in an administrative role by leaving a witness in custody, *see, e.g., Odd*, 538 F.3d at 212–16 (characterizing as "administrative" a prosecutor's failure to alert a judge to release a third-party witness from custody after the proceeding in which he was set to testify had ended). Accordingly, the Court does not determine at this time that Defendant Janci is entitled to absolute immunity for the alleged conduct.

IV. <u>Qualified Immunity</u>

Next, Defendants argue that Defendant Janci is entitled to qualified immunity. When engaged in discretionary functions, "qualified immunity shields government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). First, a court must determine what right was violated, and, second, whether the right specifically defined was clearly established such that "every reasonable official would have understood that what he [was] doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted).

Plaintiff has pled violations of his right not to be deprived of liberty without Due Process of law under the Fifth and Fourteenth Amendments as well as "the full complement of civil rights as protected by the provisions of the U.S. Constitution." (Compl. at "First Count-Violation of 42 U.S.C. § 1983" ¶ 2). The alleged conduct—that Defendant Janci fabricated grounds for Plaintiff's re-arrest, thereby subjecting Plaintiff to unlawful detention—suggests a violation of Plaintiff's Fourth Amendment right not to be unreasonably seized, satisfying the first step. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures."); *see also Schneyder v. Smith*, 653 F.3d 313, 321–22 (3d Cir. 2011).

It is beyond dispute that arresting an individual without probable cause violates a clearly established right. *See, e.g., Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Plaintiff's complaint alleges the related scenario of a prosecutor orchestrating a post-release arrest and subsequent incarceration by purposefully lying about the existence of a no-contact

13

order, where the arrest otherwise lacked probable clause. A prosecutor "engineer[ing] a false arrest" constitutes a "violation of clearly established law that would have been apparent to a reasonable officer." *Evans*, 2016 WL 2742862, at *13 (citing *Orsatti*, 71 F.3d at 483); *see also Schneyder*, 653 F.3d at 330–31 (collecting cases and holding that a prosecutor's failure to ensure the release of a person no longer lawfully detained violated clearly established law). Accepting as true the allegations in Plaintiff's complaint, Plaintiff sufficiently alleges conduct that violated a clearly established right: that Defendant Janci "knowingly violate[d] the law," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), by lying to Plaintiff's parole officer in order to effect a baseless arrest.[4] Accordingly, the Court cannot find at this time that Defendant Janci is entitled to qualified immunity. However, the Court directs the Defendant to file an additional motion based on the theory of qualified immunity with fully briefed facts and law.

V. <u>Whether Intentional Tort Claims against Defendant HCPO are Barred by the New Jersey Tort Claims Act</u>

Defendants also argue that Plaintiff's claims for intentional torts are barred by the New Jersey Tort Claims Act ("NJTCA"). Given the Court's previous finding, *supra* Section I, on Defendant HCPO's enjoyment of sovereign immunity, the Court need not decide whether Plaintiff's claims are barred by the NJTCA.

---

[4] Defendants also argue that Defendant Janci is entitled to qualified immunity because Plaintiff fails to "proffer facts . . . to show that [his] allegations are plausible." (ECF No. 13-1 at 21–22.) The Third Circuit has found that argument "legally unsound" because it is not a plaintiff's burden to bear for a qualified immunity defense. *Thomas v. Independence Twp.*, 463 F.3d 285, 291–94 (3d Cir. 2006).

14

VI. Whether Plaintiff has Pled a Malicious Prosecution Claim (Count III)

Lastly, Defendants argue that Plaintiff has not adequately pled a claim for Malicious Prosecution and therefore Count III must be dismissed. The parties apparently treat Plaintiff's Malicious Prosecution claim as a common law claim brought pursuant to New Jersey law. The Complaint does not indicate otherwise, and as a result, the Court assumes that this claim is brought pursuant to New Jersey common law. To establish a New Jersey common law malicious prosecution claim, a Plaintiff must show: (1) a criminal action was instituted by the defendant against the plaintiffs, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceedings, and (4) the criminal proceeding was terminated favorably to the plaintiff. *Lind v. Schmid*, 337 A.2d 365, 368 (N.J. 1975).

Here, Plaintiff fails to plead that the criminal proceeding allegedly caused by Defendant Janci's misconduct was terminated favorably to Plaintiff. In his opposition brief, Plaintiff introduces new facts in an effort to satisfy this factor. It is axiomatic that a party may not amend his Complaint in an opposition brief. *See, e.g., Cincerella v. Egg Harbor Twp. Police Dep't*, 2009 WL 792489, at *13 (D.N.J. Mar. 23, 2009) (citing *Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 n.5 (D.N.J. 2008)). However, the Third Circuit has instructed that where a complaint is vulnerable to Rule 12(b)(6) dismissal, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). The Court does not find that it would be inequitable or futile to grant Plaintiff leave to amend his Complaint, and as a result will do so. The Court will dismiss Count III of the Complaint without prejudice and grant Plaintiff leave to amend.

15

## CONCLUSION

For the reasons stated herein, Defendants' motion is granted in part. An appropriate order will follow.

Date: September 7, 2017

ANNE E. THOMPSON, U.S.D.J.