NOT FOR PUBLICATION

RECEIVED
DEC 03 2018
AT 11:42 AM
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAYMOND HOF,

    Plaintiff,

v.

JAMES JANCI, Esq.,

    Defendant.

Civ. No. 17-295

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment brought by Defendant James Janci ("Defendant"). (ECF No. 37.) Plaintiff Raymond Hof ("Plaintiff") opposes. (ECF No. 43.) The Court has decided the Motion after considering the parties' written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendant's Motion is denied.

## BACKGROUND

Plaintiff brings this civil rights action against Defendant, former First Assistant Prosecutor of the Hunterdon County Prosecutor's Office, in his individual capacity. (Am. Compl. ¶¶ 1, 5, ECF No. 24.) The facts pertinent and necessary for the disposition of this Motion are as follows.

On June 12, 2014, Plaintiff was charged with domestic violence. (Def.'s Stmt. of Material Facts ("Def.'s SMF") ¶ 11, ECF No. 37-3; Domestic Violence Offense Rpt. at 1–2, Ex.

1

E, ECF Nos. 37-5, 44-5 (filed under seal).) The parties dispute the specific underlying factual allegations of the charge, but allegedly Plaintiff physically assaulted his girlfriend by, at one point, wrapping surgical tape "around her lips and neck." (Pl.'s Resp. Stmt. of Material Facts ("Pl.'s Resp. SMF") ¶ 11, ECF No. 43; Domestic Violence Offense Rpt. at 2.) Police arrested Plaintiff that same day. (Def.'s SMF ¶ 11.) Although a New Jersey Superior Court entered a temporary restraining order ("TRO") prohibiting Plaintiff from contact with the girlfriend (*id.* ¶ 12; Domestic Violence Offense Rpt. at 2–5), that TRO was dismissed four days later on June 16, 2014 (Pl.'s SMF ¶ 12). On June 30, 2014, bail was set at $20,000 without a 10% option. (Def.'s SMF ¶ 13; Order of Procedure After Arrest, Ex. F, ECF No. 44-6.) A grand jury indicted Plaintiff on August 7, 2014 for (1) terroristic threats, (2) unlawful possession of a weapon, (3) possession of a weapon for an unlawful purpose, and (4–5) two counts of criminal restraint. (Def.'s SMF ¶¶ 1–2; Indictment, Ex. H, ECF No. 44-8.) Plaintiff entered a guilty plea to one count of criminal restraint on August 15, 2014. (J. of Conviction at 1, Ex. I, ECF No. 44-9.) On May 15, 2015, his plea was accepted and he was sentenced to time served, which had been 254 days. (*Id.*)

However, Plaintiff was incarcerated from the date of his arrest on June 12, 2014 until his sentencing on May 15, 2015. Consequently, sometime in late 2014, Plaintiff filed a motion to reduce bail and dismiss a no-contact order that had been previously imposed and that prohibited Plaintiff from contacting the victim, his girlfriend. A hearing was scheduled for January 8, 2015. (Def.'s SMF ¶ 16.) In anticipation of the bail hearing, Defendant submitted a letter to the presiding court, opposing any bail reduction "[g]iven the seriousness of the charges [and] the prior history of decompensation." (Ex. G, ECF No. 43-4.) The girlfriend testified during the bail hearing that the no-contact order was not necessary and, in fact, that she wanted Plaintiff to move back in with her once he was released. (Pl.'s Suppl. SMF ¶¶ 7–10, ECF No. 43.) As a

2

result, the court reduced Plaintiff's bail and lifted the no-contact order. (Def.'s SMF ¶ 18; Pl.'s Resp. SMF ¶ 18.)

Despite the fact that the court lifted the no-contact order, on the day that Plaintiff planned to post bail and seek his release, January 16, 2015, the parole office implemented a no-contact provision as a special condition of release that prohibited Plaintiff from contacting the girlfriend, with whom Plaintiff planned to reside upon release. (Def.'s SMF ¶¶ 19–20; Notice of Imposition of Special Condition ("Condition Notice") at 1, Ex. M, ECF No. 44-13; Pl.'s Suppl. SMF ¶¶ 13–15, 18–20.) Although the Condition Notice noted that a similar TRO was previously imposed and subsequently dismissed, the Condition Notice stated that it sought "to reinforce these restraining orders, prevent contact with [the girlfriend] and keep [Plaintiff] in compliance with [his supervision requirements]." (Condition Notice at 1.)

However, the parties dispute the events that occurred between the bail hearing on January 8, 2015 and implementation of the Condition Notice on January 16, 2015. Defendant admits that Defendant discussed the bail hearing with Plaintiff's parole officer, which prompted Plaintiff's parole officer to implement a no-contact provision as a special condition of Plaintiff's release, but Defendant also makes clear that "Plaintiff's parole officer implemented [the] no-contact order regardless of any representations made by [Defendant]." (Def.'s SMF ¶¶ 17, 19, 30.) Plaintiff, on the other hand, avers that Defendant discussed the bailing hearing with certain parole officers who were not even assigned to Plaintiff. (Pl.'s SMF ¶ 17.) During the course of this conversation, Plaintiff alleges that Defendant lied to the parole officers by conveying that a no-contact order was still in place and that Plaintiff was still prohibited from contacting the girlfriend. (Pl.'s Suppl. SMF ¶¶ 24–29.) Plaintiff's criminal counsel testified that he had a three-way telephone conversation with Defendant and Defendant's superior, Mr. Anthony Kearns, in

3

which Defendant admitted to lying to the parole officers because Defendant characterized Plaintiff as "an animal" and thus sought "to protect the community" from Plaintiff.[1] (*Id.* ¶¶ 24–26; Hasketh Dep. 21:21–24:13, Ex. F, ECF No. 43-4.) Plaintiff further avers that these parole officers—and not Plaintiff's assigned parole officer—are the ones who implemented the Condition Notice. (Pl.'s Suppl. SMF ¶ 19.) The parole board affirmed the Condition Notice on January 22, 2015.

As a result of the Condition Notice, Plaintiff's inability to reside with the girlfriend upon release caused several different problems for Plaintiff. Plaintiff was subject to Community Supervision for Life ("CSL") as a result of a Megan's Law conviction in 2001. (Def.'s SMF ¶ 4.) One of those terms required that Plaintiff, *inter alia*, "reside at a residence approved by the assigned parole officer." (CSL Conditions ¶ 5, Ex. K, ECF No. 44-11.) Because, at this point, Plaintiff was not permitted to reside with the girlfriend, Plaintiff had no other place to reside, and thus Plaintiff's parole officer required (per CSL Conditions ¶ 12) that Plaintiff attend a residential counseling program at the Bo Robinson House.[2] (Def.'s SMF ¶¶ 24–25; Ex. N, ECF No. 44-14; Hof Cert. ¶ 7, Ex. J, ECF No. 43-5.) The parties dispute Plaintiff's response to this condition: Defendant contends that Plaintiff refused to agree to this condition and that his refusal alone violated his CSL, "triggering his parole violation and the extension of his stay in jail" (Def.'s SMF ¶¶ 27–28, 31); Plaintiff contends that refusing to "sign off" on this condition is not

---

[1] This slight is not the only example of impropriety alleged by Plaintiff. Plaintiff also alleges that after the January 8, 2015 bail hearing, Defendant allegedly called Plaintiff's mother and instructed her not to post bail for Plaintiff. (Pl.'s Suppl. SMF ¶ 16.)

[2] Separately, Plaintiff contends that the parole office lied to him about this program: although "Plaintiff was told that the Bo Robinson House was an unlocked transitional residence with mental health treatment. . . . [t]his is not the case" as the "Bo Robinson [House] is a lock down transitional jail with no mental health treatment" (*i.e.*, "[e]ssentially a half-way house"). (Pl.'s Suppl. SMF ¶ 21.)

4

itself a violation of his CSL but, regardless, the parole officers would "not offer him another chance to sign the paper" despite Plaintiff later on agreeing to sign off on this condition (Pl.'s SMF ¶ 27; Pl.'s Suppl. SMF ¶¶ 21–22). Because the parole officers did not provide Plaintiff a second opportunity to agree to this condition, Plaintiff alleges the following:

> Officer Cunningham told Plaintiff that he was released on bail. He followed this up by saying a no-contact order was still place and that he could not live with [his girlfriend]. Officer Cunningham then told Plaintiff he would be homeless and that it was against the law for him to be homeless. As a result, Officer Cunningham arrested Plaintiff on a CSL Violation.

(Pl.'s Suppl. SMF ¶ 23.) Plaintiff was charged with a third-degree CSL violation and was placed in jail for about another month. (Hof. Cert. ¶¶ 10–11.) Plaintiff was released from jail on February 20, 2015, and upon release Plaintiff completed the required counseling over the course of the next year. (Def.'s Br. at 28, ECF No. 37-3; Hof Cert. ¶¶ 11–12.) Plaintiff eventually pleaded guilty to a previous "CSL violation regarding possessing a computer," and "[t]he CSL violation for [allegedly] refusing to commit to residential housing was dismissed." (Def.'s Suppl. Resp. at 4, ECF No. 48; *see also* CSL J. of Conviction, ECF No. 48.)[3]

On January 16, 2017, Plaintiff filed a complaint against Defendant, in his individual and official capacities, and the Hunterdon County Prosecutor's Office. (ECF No. 1.) On September 7, 2017, the Court dismissed with prejudice all claims against the Hunterdon County Prosecutor's Office. (Order at 1, ECF No. 23.) The Court also dismissed all claims in Defendant's official capacity, but denied Defendant's Motion to Dismiss in regard to the claims in his individual capacity. (*Id.*) The Court also granted Plaintiff leave to amend the complaint within twenty days of the Order. (*Id.*)

---

[3] On May 15, 2015, Plaintiff was sentenced for the CSL violation concurrently with the criminal restraint charge for time served: 254 days. (J. of Conviction at 1; CSL J. of Conviction at 1.)

5

On September 11, 2017, Plaintiff filed the Amended Complaint alleging six counts against Defendant: (1) § 1983 claim that derived from an alleged violation of Plaintiff's right not to be unreasonably seized pursuant to the Fourth Amendment (Am. Compl. ¶¶ 21–26, ECF No. 24); (2) violation of Plaintiff's rights under the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1 (*id.* ¶¶ 27–33); (3) malicious prosecution (*id.* ¶¶ 34–42); (4) malicious representation causing damage (*id.* ¶¶ 43–46); (5) fraud (*id.* ¶¶ 47–50); and (6) false imprisonment (*id.* ¶¶ 51–56). Defendant answered on October 16, 2017. (ECF No. 27.)

The parties conducted discovery over the course of the following year (*see* ECF No. 34), and, pursuant to a scheduling order (ECF No. 36), Defendant filed the instant Motion for Summary Judgment on October 12, 2018 (ECF No. 37). Plaintiff opposed the Motion on October 30, 2018 (ECF No. 43), and Defendant submitted a reply on November 20, 2018 (ECF No. 49). On November 9, 2018, the Court requested additional briefing from the parties. (ECF No. 46.) In response, Defendant submitted a supplemental response on November 20, 2018 (ECF No. 48); Plaintiff did not submit any additional briefing.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720

F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248– 49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Defendant urges the Court to grant summary judgment in favor of Defendant, primarily offering six arguments: (1) Defendant is entitled to absolute prosecutorial immunity (Def.'s Br. at 13–20); (2) Defendant is entitled to qualified immunity for the § 1983 claim (*id.* at 20–24); (3) Defendant is entitled to qualified immunity for all state claims (*id.* at 24–25); (4) Plaintiff failed to establish that Defendant's alleged misconduct was the proximate cause for Plaintiff's alleged harm (*id.* at 9–13); (5) Plaintiff has failed to plead a prima facie claim of malicious prosecution (*id.* at 25–26); and (6) Plaintiff's claims are barred by the statute of limitations (*id.* at 27–28). The Court addresses and, ultimately, rejects each of these arguments.

I. **Immunity**

   A. *Absolute Prosecutorial Immuntiy*

Defendant first claims that he is entitled to absolute prosecutorial immunity. "Most public officials are entitled only to qualified immunity" from § 1983 actions, *Yarris v. Cnty. of*

7

*Delaware*, 465 F.3d 129, 135 (3d Cir. 2006), but "state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role," *Light v. Haws*, 472 F.3d 74, 77 (3d Cir. 2007) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427, 431 (1976)). A prosecutor's quasi-judicial role includes both "activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (internal citation omitted); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999). But a prosecutor performing duties better characterized as "administrative" or "investigatory" that seemingly "do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). In those instances, the prosecutor's conduct may be entitled to qualified immunity or even no immunity at all. *See Kulwicki*, F.2d at 1463. Essentially, the prosecutor bears the burden to establish that "she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris*, 465 F.3d at 136.

Here, Plaintiff alleges in the Amended Complaint that Defendant misrepresented certain facts to parole officers which led to Plaintiff's incarceration for a time period longer than the law provides. Certainly, Defendant's alleged conduct at issue did not occur during a court proceeding or presentation of evidence or legal argument. Defendant essentially concedes this point but argues instead that he was acting "as part of his role as an advocate for the State." (Def.'s Br. at 19.)

Despite Defendant's stated justification, the circumstances do not equate to an entitlement of absolute prosecutorial immunity. Defendant first contends that his "exchanges

8

with the parole board were instituted as part of his role as an advocate for the State and *in preparation for* . . . the January 8, 2015 bail hearing" (*id.* (emphasis added)), but the record is unclear as to whether these exchanges occurred before or after the January 8, 2015 bail hearing. (*Compare* Def.'s SMF ¶ 17 (Defendant spoke with parole "[a]t some point"), *with* Pl.'s Resp. SMF ¶ 17 (Defendant spoke with parole "immediately prior to expected release").) In fact, Defendant contends that he was motivated to "keep the community and [the girlfriend] safe" (Def.'s Br. at 20), which, one may infer, may have been a response to the New Jersey Superior Court's grant of bail after the January 8, 2015 hearing.

Defendant further contends that his conduct—contacting parole to "keep the community and [the girlfriend] safe" (*id.*)—occurred "while deciding whether or not to dispose of the case on a plea or oppose the motion for bail" (*id.* at 18). But a reading of the facts most favorable to the non-movant demonstrates that Defendant was not deciding whether to initiate prosecution as Plaintiff had already been charged and indicted. Defendant was also not deciding whether to oppose bail as it was clear that Defendant already opposed bail and generally felt strongly about Plaintiff's propensity for violence. (*See, e.g.*, Pl.'s Suppl. SMF ¶¶ 26–28 (citing testimony that Defendant called Plaintiff "an animal" and that Defendant "thought it was the right thing to have [Plaintiff] removed from their county").)

The Court finds that genuine issues of material fact exist to prevent a grant of summary judgment in favor of Defendant. The Court is unable to determine whether Defendant's conduct was in preparation for a "judicial proceeding" and, if it was, whether Defendant's conduct exceeded his advocative role as prosecutor. Indeed, as the Court stated in its Opinion regarding Defendant's Motion to Dismiss, it still seems plausible that Defendant's conduct more closely mirrors cases in which prosecutors acted in a purely investigative role. (*See* Op. at 12, ECF No.

9

22.) If Plaintiff's proffered allegations were true, Defendant would not be entitled to absolute immunity. *Cf. Buckley*, 509 U.S. at 276–78 (concluding that prosecutor was not acting as state's "advocate" and thus not entitled to absolute immunity). Therefore, the Court finds that Defendant is not entitled to absolute prosecutorial immunity.

B.   *Qualified Immunity*

Defendant also claims that, in the alternative, he is entitled to qualified immunity. "The doctrine of qualified immunity shields government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The court determines (1) "whether the facts, and inferences drawn therefrom, taken in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right," *id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); and (2) "whether, as a legal matter, the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known," *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). Defendant carries "the burden of persuasion at a summary judgment proceeding [as he is] the party asserting the affirmative defense of qualified immunity." *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). Defendant therefore must either "show that there was no genuine dispute of material fact to refute the[] contention that [Defendant] did not violate [Plaintiff's] constitutional rights as he asserted them, or show that reasonable officers could not have known that [Defendant's] conduct constituted such a violation when [Defendant] engaged in it." *Id.*

1. Clearly Established Right

Plaintiff alleges that Defendant lied to parole officers to manufacture Plaintiff's unlawful arrest, thereby violating Plaintiff's Fourth Amendment right not to be unreasonably seized. (Pl.'s Br. at 24, ECF No. 43.) At the outset, the Court recognizes, as it recognized in its previous Opinion (*see* Op. at 13–14), that arresting an individual without probable cause or "engineer[ing] a false arrest" constitutes a "violation of clearly established law that would have been apparent to a reasonable officer." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995); *Evans v. City of Newark*, 2016 U.S. Dist. LEXIS 62070, at *39 (D.N.J. May 10, 2016). Because the Court is free to address the two prongs in the order of its choosing, *Walker v. Coffey*, 2018 U.S. App. LEXIS 26864, at *6 (3d Cir. Sep. 20, 2018) (noting that "[a] court may address either of these questions first" (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009))), at this point the Court finds that this step is satisfied.

2. Fourth Amendment Violation

Moving on to the other step, the Court must determine whether Defendant adequately refutes the contention that Defendant violated Plaintiff's Fourth Amendment right not to be unreasonably seized. *Halsey v. Pfeiffer*, 750 F.3d at 288. Plaintiff alleges in the Amended Complaint that Defendant violated the Fourth Amendment "by inflicting false imprisonment upon [P]laintiff" (Am. Compl. ¶ 24) and in its brief currently before the Court that Defendant violated the Fourth Amendment by "arrest[ing Plaintiff] without probable cause" (Pl.'s Br. at 24). The Court construes Plaintiff's allegations as stating a false arrest or false imprisonment claim under the Fourth Amendment, and must determine whether Defendant sufficiently refutes this claim.

11

"To state a false arrest or false imprisonment claim under the Fourth Amendment and pursuant to Section 1983 requires that the plaintiff show that 'the arresting officer lacked probable cause to make the arrest.'" *Hickson v. Marina Assocs.*, 743 F. Supp. 2d 362, 370 (D.N.J. 2010) (internal citation omitted); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (noting that "lack of probable cause" is a common element in both false arrest and false imprisonment claims under the Fourth Amendment). "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense,'" *Sharrar v. Felsing*, 128 F.3d 810, 817–18 (3d Cir. 1997) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)), and courts must examine "the totality of the facts and circumstances," *Hickson*, 743 F. Supp. 2d at 370.

The Court previously found that Plaintiff's allegation—fabricating grounds for Plaintiff's re-arrest—sufficed to survive the motion-to-dismiss stage. Here, too, the Court finds that this allegation suffices to survive this stage of the litigation. First, Plaintiff presents evidence that buttresses his claim. Plaintiff's criminal counsel testified during his deposition that he heard Defendant admit to lying to the parole officers in an effort to protect the girlfriend and the community. (Hasketh Dep. 21:21–24:13; Pl.'s Suppl. SMF ¶¶ 26–27.) Knowingly and deliberately making false statements to instigate an arrest, even with good intentions, would probably constitute a Fourth Amendment violation. *See Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (outlining a successful § 1983 claim for false arrest).[4]

---

[4] Defendant submits that "Plaintiff fails to set forth plausible constitutional violations against him." (Def.'s Br. at 23.) However, Defendant seemingly concedes that Plaintiff alleges that "[Defendant] wrongly contacted [P]laintiff's parole officer and lied about a no contact order." (*Id.*) Defendant essentially argues that even if he had lied to a parole officer—triggering Plaintiff's unjustified re-arrest and thereby subjecting him to unlawful detention—that conduct did not violate Plaintiff's Fourth Amendment right not to be unreasonably seized.

12

Second, although Defendant refutes Plaintiff's allegations, genuine issues of material fact exist that preclude Defendant's entitlement to qualified immunity: (1) Defendant submits that Defendant spoke with "Plaintiff's parole officer" and that Plaintiff's parole officer made the decision to implement the no-contact provision (Def.'s SMF ¶¶ 17, 19), but Plaintiff submits that Defendant spoke with parole officers not assigned to Plaintiff and that the decision to implement the no-contact provision was not made by Plaintiff's assigned parole officer (Pl.'s Resp. SMF ¶¶ 17, 19); (2) Defendant contends that the parole board imposed the Condition Notice "to keep Plaintiff in compliance with his CSL" (Def.'s SMF ¶ 21), but Plaintiff contends that prior to the Condition Notice, "there was no parole or CSL restriction preventing Plaintiff from contacting [his girlfriend]" (Pl.'s Resp. SMF ¶ 21); (3) Defendant argues that Plaintiff had no place to reside upon release (Def.'s SMF ¶¶ 25, 27), but Plaintiff argues that he was not permitted to "stay at a hotel temporarily" as in previous times when he was bailed out and that the parole officers rescinded their offer to permit Plaintiff to stay at the Bo Robinson House (Pl.'s Resp. SMF ¶ 25; Pl.'s Suppl. SMF ¶ 22); and (4) Defendant claims that the parole officers knew that the New Jersey Superior Court lifted the no-contact order but reinstated the no-contact condition notwithstanding their conversation with Defendant. (Def.'s SMF ¶ 30.) Plaintiff, however, claims that the two parole officers, who were not assigned to Plaintiff, believed that a no-contact was still in place as a result of their conversation with Defendant. (Pl.'s Suppl. SMF ¶¶ 20, 23.)

Finally, numerous factual conflicts restrain the Court's ultimate conclusion. Because it is Defendant's burden to resolve these discrepancies and unanswered questions, the Court finds that Defendant is not entitled to qualified immunity.

C. *State Law Immunity*

Defendant also contends that he is entitled to qualified immunity for all state or common

law claims "for the same reasons [he] would be entitled to qualified immunity for any alleged federal constitutional violations." (Def.'s Br. at 24–25.) The New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:3-3, provides that "[a] public employee is not liable if he acts in good faith in the execution of enforcement of any law." Defendant here concedes that "New Jersey has adopted the same standard of objective reasonableness which applies in § 1983 cases" as the "[NJTCA] is coterminous with the analysis of objective reasonable under § 1983 qualified immunity." (Def.'s Br. at 24–25 (collecting cases).) Indeed, the New Jersey Supreme Court has clarified that "[t]he same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the [NJTCA]." *Ianuale v. Borough of Keyport*, 2018 U.S. Dist. LEXIS 177515, at *31 (D.N.J. Oct. 16, 2018) (quoting *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1153 (N.J. 2000)); *French v. Squire-Tibbs*, 2013 U.S. Dist. LEXIS 90170, at *18 (D.N.J. June 26, 2013) ("[B]ecause the Court has already found that Defendant is not entitled to qualified immunity under the standard for section 1983 claims, it must also find that his actions were not 'objectively reasonable' under the [NJTCA] standard."). Therefore, because the Court finds that Defendant is not entitled to qualified immunity for the § 1983 claim, the Court likewise finds Defendant is not entitled to immunity under the NJTCA.

## II. Statute of Limitations

Defendant also contends that the Amended Complaint is barred by the statute of limitations and should thus be dismissed with prejudice. (Def.'s Br. at 27–28.) Defendant explains that the state law of New Jersey provides a two-year statute of limitations for Plaintiff's § 1983 claim. Because "Plaintiff posted bail on February 20, 2015 . . . . his complaint needed to be filed February 20, 2017." (*Id.* at 28.) Therefore, Defendant contends, the Amended Complaint is barred "[a]s the present action was not commenced until October 1, 2017." (*Id.*)

14

However, Plaintiff did not commence this litigation on October 1, 2017; Plaintiff filed the original complaint on January 16, 2017. (ECF No. 1.) If Defendant were referring to the date Plaintiff filed the Amended Complaint, that date is September 11, 2017. (ECF No. 24.)

Regardless, though Defendant is correct that New Jersey's two-year statute of limitations is appropriate here, *see Ong v. Hudson County Superior Court*, 2018 U.S. App. LEXIS 27918, at *4 (3d Cir. Oct. 2, 2018) (explaining that "[a] complaint pursuant to § 1983 is characterized as a personal-injury claim and thus is governed by . . . . New Jersey's two-year statute of limitations [for] personal injury actions" (internal citation omitted)), the Amended Complaint relates back to the date of the original complaint because the Court granted Plaintiff twenty days to amend his complaint and Plaintiff filed the Amended Complaint within that period of time, *Atkinson v. Middlesex County*, 610 F. App'x 109, 111 (3d Cir. 2015) (noting that a plaintiff may not cure a deficiency and refile a complaint "if the statute of limitations has run by the time the court orders dismissal without prejudice, *unless* the District Court grants leave to amend within a time certain" (emphasis added) (internal citation omitted)); *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005) (concluding that "orders which dismiss a complaint without prejudice with leave to amend are not deemed final until either the time for amendment has expired or the plaintiff has announced its intention to stand on its complaint"). Accordingly, Defendant's argument fails.

### III. Proximate Causation

"A § 1983 claim requires that the state actor was the proximate cause of the plaintiff's harm." *Johnson v. Provenzano*, 646 F. App'x 279, 282 (3d Cir. 2016). To prove his claim, a plaintiff "must establish an affirmative link or plausible nexus between the afore-described [misconduct] and [his] incarceration." *Bielevicz v. Dubinon*, 915 F.2d 845, 854 (3d Cir. 1990). At this stage of the litigation, however, a plaintiff need only "put forth evidence from which a

jury might infer . . . a *plausible* nexus between the [alleged misconduct] and plaintiff['s] injuries. *Id.* (emphasis added).

Defendant contends that he is entitled to summary judgment because Defendant's alleged misconduct was not the proximate cause of Plaintiff's alleged harm. (Def.'s Br. at 9–13.) Defendant argues that Plaintiff's parole officer was aware that the no-contact order had been lifted, so that any misinformation that may have been relayed to him had nothing to do with the ultimate decision to implement the Condition Notice.[5] (*Id.* at 9.) But Defendant provides no direct evidence, such as deposition testimony from the parole officers, that the parole board was aware that the superior court had lifted the no-contact order. Rather, Defendant identifies three pieces of circumstantial evidence and urges the Court to infer that the parole board was aware that the no-contact order had been lifted and thus Defendant's alleged misrepresentation could not have influenced the parole board's decision to implement a no-contact condition on Plaintiff's release.

Defendant first maintains that the Condition Notice itself provides a justification for the no-contact provision. (Def.'s Br. at 10–11.) The Condition Notice states in relevant part:

> A recent check . . . revealed a Temporary Restraining Order prohibiting you from having contact with [your girlfriend] which was imposed on 6/12/2014 and dismissed on 6/16/[20]14. . . . This special condition is being imposed in an effort to reinforce these restraining orders . . . and keep you in compliance with your [CSL].

(Condition Notice at 1.) However, this explanation appears to refute Defendant's argument. This explanation suggests that its author, whose name is illegible to the Court, believed a no-contact order *was* still in place and that this Condition Notice simply reinforced that order.

---

[5] It is worth noting as well that the parties dispute the identity of the parole officer with whom Defendant communicated. (*Compare* Def.'s SMF ¶ 17 (parole officer assigned to Plaintiff), *with* Pl.'s SMF ¶ 17 (two parole officers unassigned to Plaintiff).)

16

Defendant next asserts that Plaintiff remained incarcerated after the January 8, 2015 bail hearing merely because Plaintiff refused to sign the condition that he enter a community treatment facility prior to his release. (Def.'s Br. at 12.) In response, Plaintiff insists that he eventually acquiesced and agreed to comply, but the parole officers by then rescinded that offer. (Pl.'s Br. at 19.) However, the Court is unable to decipher the cause of Plaintiff's re-arrest and continued incarceration because the facts underlying the second charge remain cloudy. Indeed, the charge related to Plaintiff's re-arrest—allegedly violating his CSL for refusing to commit to residential housing—was ultimately dismissed. (Def.'s Suppl. Resp. at 4; *see also* CSL J. of Conviction.)

Defendant lastly submits that "the parole board did its due diligence, and independent of [Defendant's] representations, found that there was no such [court] order in place" (Def.'s Br. at 12), essentially rendering Defendant's alleged misconduct meaningless. But Plaintiff contends that this contention "is patently false and incredibly misleading" as Defendant has provided no evidence that such an independent investigation occurred. (Pl.'s Br. at 18.) These disputes of material fact and ostensible ambiguity, therefore, compels the Court to deny Defendant's Motion for Summary Judgment.

## IV. Malicious Prosecution

Under New Jersey common law, to establish a claim for malicious prosecution, a plaintiff must show that (1) a criminal action was instituted by the defendant against the plaintiff, (2) the criminal action was actuated by malice, (3) there was an absence of probable cause for the proceedings, and (4) the criminal proceeding was terminated favorably to the plaintiff. *Pitman v. Ottehberg*, 2013 U.S. Dist. LEXIS 140564, at *25 n.13 (D.N.J. Sep. 30, 2013) (citing *Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 838 (3d Cir. 2009); *LoBiondo v. Schwartz*, 970 A.2d 1007,

1022 (N.J. 2009)).

Defendant contends that Plaintiff's claim for malicious prosecution should be dismissed because Plaintiff "failed to allege any of the requirements for establishing a claim for malicious prosecution." (Def.'s Br. at 25–26.) More specifically, Defendant argues that (1) "[t]he proceeding was not instituted by malice but because the police respond[ed] to a domestic violence call"; (2) "there was probable cause for the domestic violence charge"; (3) Plaintiff failed to adduce evidence that his "charge for violating his [CSL] allegedly caused by [Defendant's] misconduct was later terminated in his favor." (*Id.* at 26.)

Notwithstanding, because the facts as to which charge resulted in a favorable outcome for Plaintiff are muddied, the Court cannot conclude whether the required elements are present. Therefore, Defendant's Motion for Summary Judgment on the malicious prosecution claim is denied.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is denied. An appropriate order will follow.

Date: 11/30/2018

								_____
								ANNE E. THOMPSON, U.S.D.J.